United States District Court
District of Massachusetts

|  |  |
|---|---|
| United States of America,<br><br>        v.<br><br>Jesus Ivan Jimenez Joachin,<br><br>        Defendant. | )<br>)<br>)<br>)   Criminal Action No.<br>)   22-10101-NMG<br>)<br>)<br>) |

MEMORANDUM & ORDER

GORTON, J.

Jesus Ivan Jimenez Joachin ("Jiminez Joachin" or
"defendant") is a citizen and national of Mexico.  In May, 2022,
he was charged by indictment with one count of unlawful reentry
in violation of 8 U.S.C. § 1326.  Defendant has filed a motion
to dismiss the indictment on grounds that the unlawful reentry
statute violates the equal protection component of the Due
Process Clause of the Fifth Amendment to the United States
Constitution (Docket No. 35).  The government has opposed the
motion (Docket No. 43) and defendant has filed a supplemental
response (Docket No. 46).  For the reasons that follow, the
motion will be denied.

I.  **Background**

Defendant was found in the United States without legal
status in 2016 while awaiting trial on state law charges and was
removed to Mexico in November, 2016.  At some point thereafter,

-1-

Jiminez Joachin returned to the United States.  He was again encountered by immigration authorities after being arrested in August, 2019.  Defendant was fingerprinted and a forensic laboratory confirmed that his fingerprints matched those taken at the time of his prior removal in 2016.  A criminal complaint and arrest warrant were issued in September, 2019.  Defendant was arrested in April, 2022, and a grand jury returned a one—count indictment charging him with the violation of 8 U.S.C. § 1326 on May 5, 2022.

## II.  **Motion to Dismiss the Indictment**

The pending motion contends that Section 1326 of the Immigration and Nationality Act ("the INA") violates the Fifth Amendment.  Defendant asserts that a predecessor statute to the INA, the Undesirable Aliens Act of 1929 ("the UAA"), was enacted with a clear discriminatory purpose.  According to Jiminez Joachin, the subsequent enactment of the INA in 1952 continued to suffer from the same discriminatory purpose which originally motivated the criminalization of illegal reentry.

Although the issue presented here has not previously been addressed by any session in this district, it is hardly unplowed ground.  Dozens of district courts throughout the country have considered similar challenges to Section 1326 in the wake of a decision by a court in the District of Nevada.  See, e.g., United States v. Maldonado-Guzman, 2022 U.S. Dist. LEXIS 123170,

-2-

at *5 (S.D.N.Y. July 12, 2022) (referring to United States v. Carrillo-Lopez, 555 F. Supp. 3d 996 (D. Nev. 2021)).  In that underlying District of Nevada decision, the Court held that Section 1326 violated the Fifth Amendment and dismissed the indictment against the defendant. Carrillo-Lopez, 555 F. Supp. 3d at 1019-22, 1028.

The Carrillo-Lopez decision has not been followed by any district court which has subsequently considered similar Fifth Amendment challenges to Section 1326. See, e.g., United States v. Vera, 2022 U.S. Dist. LEXIS 154629, at *1-2 (D.N.H. August 29, 2022) (collecting more than 20 cases); United States v. Barrera-Vasquez, 2022 U.S. Dist. LEXIS 134692, at *2 n.2 (E.D. Va. July 28, 2022) (explaining that "[o]f the numerous district courts to consider these arguments," only Carrillo-Lopez found § 1326 unconstitutional); United States v. Salas-Silva, 2022 U.S. Dist. LEXIS 104851, at *2 (D. Nev. June 13, 2022) (noting that numerous district courts have addressed the reasoning of Carrillo-Lopez and none has followed it).

**A. Standard of Review**

The parties dispute which standard of review should apply to the case at bar.  Defendant contends that Section 1326 is unconstitutional under the framework established in Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977).  To meet his burden to establish a prima facie claim

-3-

under the Arlington Heights standard, a challenger must prove
that a discriminatory purpose was a "motivating factor" in the
enactment of a facially neutral statute. Id. at 265-66.

The government responds that federal immigration statutes
which distinguish between citizens and non-citizens are subject
to rational basis review.  Indeed, it is well-settled that "the
power over aliens is of a political character." Hampton v. Mow
Sun Wong, 426 U.S. 88, 101 n.2 (1976).  The Supreme Court has
held that the legislative power to admit, exclude and expel
aliens is a fundamental attribute of sovereignty "largely immune
from judicial control." Fiallo v. Bell, 430 U.S. 787, 792
(1977).  Thus, there is typically a "narrow standard of review"
with respect to matters of immigration. Mathews v. Diaz, 426
U.S. 67, 81-82 (1976).

Jiminez Joachin rejoins, however, that his challenge to
Section 1326 does not rest on allegations of discrimination
based upon citizenship status.  Rather, he claims that the
criminalization of illegal reentry invidiously discriminates
against people of Mexican and Latino descent.

This Court will consider defendant's challenge under the
Arlington Heights framework rather than conduct rational basis
review because he alleges discrimination based upon a racial
classification. See, e.g., Vera, 2022 U.S. Dist. LEXIS 154629,
at *1 n.1 (applying Arlington Heights because of "the nature of

Vera's equal protection claim and his presence within the United States"); United States v. Viveros-Chavez, 2022 U.S. Dist. LEXIS 104917, at *4 (N.D. Ill. June 13, 2022) (declining to apply rational basis review because defendant's "challenge is based on a claimed racial classification").  Moreover, the Supreme Court recently applied the Arlington Heights framework to equal protection claims in the immigration context in Department of Homeland Security v. Regents of the University of California, 140 S. Ct. 1891 (2020).  It would therefore be unwarranted to conclude, as the government proposes, that rational basis review necessarily is the operative standard in all cases involving federal immigration laws.

**B. Applicable Legal Standard**

Under Arlington Heights, the challenger of a facially neutral statute must establish "[p]roof of racially discriminatory intent or purpose". 429 U.S. at 265.  The purportedly disparate impact of the subject statute "may provide an important starting point" but is rarely determinative. Id. at 266 (citing Washington v. Davis, 426 U.S. 229, 242 (1976)).  Instead, an effective appraisal "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Id.  The historical background and legislative history of the statute at issue, including statements by members of the legislature and the sequence of events leading to passage

-5-

of the statute, are relevant evidence to that inquiry. Id. at 267-68 (noting that procedural or substantive departures from the normal decision-making process "may [also] be relevant").

If the challenger successfully makes a prima facie case establishing discriminatory purpose, the government may rebut that case by showing it would have reached the same decision, or enacted the same statute, in the absence of the discriminatory purpose. Id. at 270 n.21.

### C. Application

#### 1. Disproportionate Impact

Defendant contends that Section 1326 has a disproportionate and unjustified impact on Mexican and Latino people.  The government responds that the disproportionate share of Latinos among those unlawfully entering the United States and the extensive border between the United States and Mexico explains that disparate impact.  This Court finds such undisputed facts compelling as have many other courts. See, e.g., Barrera-Vasquez, 2022 U.S. Dist. LEXIS 134692, at *16; Regents, 140 S. Ct. at 1915-16 (explaining that one should expect the large proportion of Latinos in the unauthorized alien population to result in immigration policies having an outsized impact on Latinos and that this fact alone cannot substantiate an equal protection challenge).

In the supplemental response in support of his motion to
dismiss the indictment, Jiminez Joachin asserts that the
statistics with respect to prosecutions of people with Latino
surnames for unlawful reentry in the District of Massachusetts
are even more lopsided than can be explained by the large share
of Latinos in the overall unauthorized alien population in the
Commonwealth.  Even accepting defendant's statistics, the Court
finds that they do not present an appropriate comparison.

The geographic proximity and extensive border between the
United States and Mexico suggests that the proportion of Latinos
among those unauthorized aliens who have unlawfully re-entered
this country may be significantly higher than the proportion of
Latinos among the more general cohort of all unauthorized
aliens. See, e.g., United States v. Arenas-Ortiz, 339 F.3d 1066,
1070 (9th Cir. 2003) (noting "that it would be substantially
more difficult for an alien removed to China to return to the
United States than for an alien removed to Mexico to do so");
Viveros-Chavez, 2022 U.S. Dist. LEXIS 104917, at *24-25
(explaining that the allegation that 99.1% of people charged
with unlawful reentry were Hispanic could be explained by "the
possibility that 99.1 percent of those attempting to unlawfully
reenter the United States in 2020 were Hispanic.").  Thus, the
statistics cited by defendant do not demonstrate the disparities
or support the inference which he propounds.

It is clear that Section 1326 has a disparate impact on Latinos but that such impact is substantially supported by factors which do not suggest an inference of discriminatory purpose. From that starting point, the Court will consider the available evidence of intent behind the enactment of Section 1326.

## 2.  Evidence of Intent

### a.  The 1929 Undesirable Aliens Act

Defendant focuses on the legislative history and historical backdrop of the enactment of the UAA in 1929. There is no dispute that such evidence includes racist and xenophobic language and evinces widespread discriminatory intent. It is, however, of little relevance to an inquiry into the intent of the INA. See, e.g., United States v. Sifuentes-Felix, 2022 WL 293228, at *2 (D. Colo. Feb. 1, 2022) ("As countless other courts have found, such evidence [about the UAA] bears little weight on Section 1326".); United States v. Suquilanda, 2021 U.S. Dist. LEXIS 202398, at *15 (S.D.N.Y. Oct. 20, 2021) (holding that evidence pertaining to the UAA "bears little weight on Section 1326").

Jiminez Joachin nevertheless contends that the enactment of the INA "did not purge" the discriminatory intentions behind the UAA. Defendant proposes that the Court infer the enactment of the INA was motivated by the same discriminatory purpose of the

-8-

UAA unless proven otherwise.  This Court declines to do so

because the Supreme Court has held that

> [t]he allocation of the burden of proof and the
> presumption of legislative good faith are not changed
> by a finding of past discrimination . . . .

Abbott v. Perez, 138 S. Ct. 2305, 2324 (2018).

It would be unwarranted to ignore that presumption of

legislative good faith or to interpret the enactment of the INA

in 1952 as an adoption of the intent behind the UAA in 1929. See

Arlington Heights, 429 U.S. at 265-67 (holding that analysis of

intent turns on the intent behind the "challenged" action or

decision).  Moreover, the INA was not simply a re-enactment of

the UAA and Section 1326, specifically, had novel elements.  See

Viveros-Chavez, 2022 U.S. Dist. LEXIS 104917, at *12

(cataloguing substantive differences demonstrating "that section

1326 is not a mere reenactment of the UAA").  Any potential

justification for inferring the continuity of intent from one

statute to another is therefore even further defrayed. See

Abbot, 138 S. Ct. at 2325 (noting that Abbot was not a case "in

which a law originally enacted with discriminatory intent is

later reenacted by a different legislature").

### b.  The 1952 Immigration and Nationality Act

The affidavits submitted in support of defendant's motion

to dismiss are directed primarily to the enactment of the UAA

and general economic and historical context in the years

-9-

preceding the enactment of the INA.  Evidence of contemporaneous events does not support defendant's proposition either.  First, a letter submitted to the Judiciary Committee by Attorney General Peyton Ford ("Ford") containing the slur "wetbacks" is not indicative of Congress's intent.  Ford was not a member of Congress and his use of the pejorative term was in a portion of the letter which did not refer to Section 1326.  His statement may have been offensive and inappropriate but it does not shed light on the motivation of a legislative body of which he was not a member.

Second, defendant cites statements made by President Truman in explanation of his veto of the INA.  The President was not a member of Congress either and, in any event, statements by the opponents of a bill are rarely probative of congressional intent. See Bryan v. United States, 524 U.S. 184, 196 (1998) ("fears and doubts of the opposition are no authoritative guide").  Furthermore, Truman's objections to the racial implications of the proposed INA do not refer to Section 1326 at all and the government notes that he began his statement by conceding that the bill "contains certain provisions that meet with my approval." See also, e.g., United States v. Machic-Xiap, 552 F. Supp. 3d 1055, 1075 (D. Or. 2021) (finding that "the [veto] statement tells the Court nothing about what President Truman thought about § 1326 specifically").

Finally, Jiminez Joachin refers broadly to "the statements of representatives" and, indeed, the affidavit submitted by Professor S. Deborah Kang quotes several racist and/or xenophobic quotes from proponents of the INA.  Such statements were not in reference to Section 1326 and provide "no evidence that the legislature as a whole was imbued with racial motives." Brnovich v. Democratic Nat'l Comm., 141 S. Ct. 2321, 2350 (2021); see also United States v. O'Brien, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it[.]").  This Court concludes that such statements do not indicate that the legislative history of Section 1326 was infected by a discriminatory purpose or that the sequence of events leading to its passage evince invidious intent. See also, e.g., United States v. Muñoz-De La O, 586 F. Supp. 3d 1032, 1048-49 (E.D. Wash. 2022) (rejecting the notion that broad conclusions about legislative intent can be drawn from "isolated remarks by individual congressmembers").

Although evidence cited by defendant bears on the broad "historical background" of the INA, it is relevant only to one factor in the Arlington Heights framework and does not constitute adequate proof that a discriminatory purpose was a motivating factor behind the legislation. See, e.g., Maldonado-Guzman, 2022 U.S. Dist. LEXIS 123170, at *11 ("These proffers

-11-

are relevant to the extent they elucidate the historical context in which § 1326 was enacted."); Vera, 2022 U.S. Dist. LEXIS 154629, at *2 (collecting cases which found that the evidence at issue "does not satisfy the showing required to demonstrate the unconstitutionality of § 1326").

### c.   Subsequent Amendments to the INA

Even if Jimenez Joachin had met his burden of demonstrating that the original version of Section 1326 had been infected by a discriminatory purpose, the provision has been modified several times since it was enacted in 1952.  He presents no argument or evidence suggesting that a discriminatory purpose was a motivating factor in those subsequent amendments.

Because defendant has not met his prima facie burden under Arlington Heights, the Court need not consider whether the government has demonstrated that the provision would have been enacted in any event.

**ORDER**

For the foregoing reasons, defendant's motion to dismiss the indictment (Docket No. 35) is **DENIED**.

**So ordered.**


           /s/ Nathaniel M. Gorton
           Nathaniel M. Gorton
           United States District Judge

Dated:  December 16, 2022